UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| TALMADGE ADIB TALIB, | Case No. CV 15-3825-JAK (DFM) |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |
| JUAN GUERRERO et al., | |
| Defendants. | |

| | |
|---|---|
| DANIEL A. DAVIS, | Case No. CV 15-3829-JAK (DFM) |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |
| JUAN GUERRERO et al., | |
| Defendants. | |

| | |
|---|---|
| ROLAND LEROY REESE-BEY, | Case No. CV 15-3833-JAK (DFM) |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |
| JUAN GUERRERO et al., | |
| Defendants. | |

ROMANÁH HOLMES-BEY,

　　　　　　　　Plaintiff,

　　　v.

JUAN GUERRERO et al.,

　　　　　　　　Defendants.

)
)
)
)
)
)
)
)
)
)
)

Case No. CV 15-4822-FMO (DFM)

MEMORANDUM AND ORDER
DISMISSING COMPLAINT WITH
LEAVE TO AMEND

# I.

## INTRODUCTION

These four separate lawsuits arise out of the same incident. Plaintiffs Talmadge Adib Talib ("Talib"), Daniel A. Davis ("Davis"), Roland Leroy Reese-Bey ("Reese"), and Romanáh Holmes-Bey ("Holmes") (collectively, "Plaintiffs") have each filed separate but substantially similar pro se civil rights lawsuits against law enforcement officers employed by the Los Angeles County Sheriff's Department ("LASD").

This Court dismissed the complaints filed by Talib, Davis, and Reese with leave to amend. Each has now filed a first amended complaint. Case No. CV 15-3825, Dkt. 7 ("Talib FAC"); Case No. CV 15-3829, Dkt. 9 ("Davis FAC"); Case No. CV 15-3833, Dkt. 10 ("Reese FAC"). Holmes's original complaint was filed several weeks after the complaints filed by Talib, Davis, and Reese; she also has now filed a first amended complaint. Case No. 15-4822, Dkt. 8 ("Holmes FAC").

Each of the FACs names the same individual Defendants: (1) Juan Guerrero, (2) Stephen Park, (3) "John Doe" Swanson, (4) "John Doe" Anderson, (5) "John Doe" Romero, (6) "John Doe" Hooper, (7) "Jane Doe" Marchello, (8) "John Doe" Orbe; (9) "John Doe" Will; (10) Alex Gillinets, (11) James North; (12) Rich Kiguelman; (13) "John Doe" Luna; (14) "Jane Doe" Wallace; (15) "Jane Doe" Worrell; (16) "John Doe" Atkins; and (17)

2

"John Doe" Juarez. Talib FAC at 5-16; Davis FAC at 5-16; Reese FAC at at 5-16; Holmes FAC at 5-16. All of the Defendants are named in both his or her individual and official capacity. Id. Plaintiffs also name the LASD and the County of Los Angeles. Talib FAC at 16-19; Davis FAC at 16-19; Reese FAC at 16-19; Holmes FAC at 16-19.

In accordance with 28 U.S.C. § 1915(e)(2), the Court must screen the FACs before ordering service for purposes of determining whether the action is frivolous or malicious; or fails to state a claim on which relief might be granted; or seeks monetary relief against a defendant who is immune from such relief.

## II.

### SUMMARY OF PLAINTIFFS' ALLEGATIONS

The four FACs allege a substantially similar version of events.

On the evening of July 10, 2013, Plaintiffs attended a meeting in Inglewood. After the meeting, Reese and Holmes agreed to give Davis and Talib a ride home. The four left in Reese's personal vehicle, which is never completely described but appears to be a pick-up truck with a camper shell in the bed area. Reese, Holmes, and Davis were in the passenger compartment of the truck with Reese driving. Talib rode in the truck bed.

At approximately 11:05 p.m., Reese stopped his truck near the intersection at 107th Street and Normandie Avenue after being pulled over by a marked LASD patrol car. From the outset, Davis made a recording of the incident using his phone. Park approached the driver's window and ordered Reese to turn off the engine. Reese asked Park why they had been stopped. Park cited a case, United States v. Miles, as the basis for the traffic stop.

Meanwhile, Guerrero approached the truck's back window and Talib. Guerrero drew his gun and pointed it in Talib's face and began yelling at Talib. Stunned by the fact that Guerrero was pointing a gun in his face, Talib froze

3

and initially did not respond to Guerrero's questions. After Guerrero repeatedly asked Talib "do you understand English?", Talib responded by saying, "[y]ou have that gun in my face, you are threaten[ing] my life!" Reese expressed concern to Park about what was going on in the back of the truck.

Park then ordered Reese, Holmes, and Davis to put their hands on the dashboard for his safety. Park next asked a series of questions which Reese, Holmes, and Davis apparently refused to answer. Meanwhile, Guerrero ordered Talib to show his left hand, a command that Talib also appeared to refuse, telling Guerrero that he would not move because Guerrero was threatening his life. Guerrero ordered Talib to exit the vehicle. Talib refused, telling Guerrero that he lacked authority and was violating his rights. Guerrero repeated his order, and Talib asked what law compelled him to follow Guerrero's orders. Guerrero told Talib, "United States v. Miles." Talib disputed whether case law was adequate authority.

As Park continued to interrogate Reese, Holmes, and Davis, a second patrol car carrying two additional officers came to a screeching stop nearby. One of those officers drew his gun and began pulling Talib from the vehicle. Talib reiterated his demand for authority for the officers' actions. The officers told Talib he was being uncooperative and Talib disagreed, maintaining that he had not committed a crime.

Park then ordered Reese to exit the vehicle. Reese asked Park if he was going to handcuff him. Park said he was not but when Reese got out of the car Park handcuffed him. Reese told Park that he did not consent to any physical contact. Park ignored Reese comments and proceeded to search him. Park then put Reese into a patrol car.

A third patrol car arrived and two more officers went to the back of the truck. North had a camera and began recording the incident. The officers continued to try to get Talib out of the vehicle as he continued to argue. Orbe

1  ordered Talib to show his hands and pointed a gun at Talib.

2      Park returned to the passenger compartment and ordered Holmes to get

3  out of the vehicle. Holmes refused. Park explained that she could be ordered to

4  get out of the vehicle during a traffic stop for officer safety. Holmes disputed

5  whether there was "probable cause" for the traffic stop and Park explained that

6  "I pulled you over because you have someone in the back of the truck."

7  Holmes contended that they were not endangering anyone. Park explained

8  that having someone in the truck bed was illegal and dangerous. Park

9  explained that having someone riding in the truck bed was a Vehicle Code

10  violation. Holmes argued that there was no one injured and continued to

11  refuse to get out of the vehicle. Park reiterated the basis for the traffic stop.

12      Davis and Holmes then told Park that if he touched them it would be an

13  assault. Davis also argued with Park about the basis for the traffic stop.

14  Guerrero then told Park that "the Sergeant" wanted to speak with him. Park

15  left and Guerrero cautioned Holmes not to make any sudden movements.

16      The officers then asked Holmes to come to the back of the vehicle to

17  speak with Talib, warning her that "you'd better come back here and . . . get

18  him to cooperate or we're going to spray him with mace." Holmes asked Talib

19  why he was refusing to get out of the car. Talib explained that the officers had

20  pointed their guns at him and assaulted him.

21      Park and Guerreo then sprayed mace on Talib and forcefully removed

22  him from the vehicle. The fumes from the mace reached the front of the truck

23  and began choking Davis. Talib was handcuffed and placed in a patrol car.

24      North attempted to get a statement from Holmes. She refused to answer

25  any questions, invoking her right to remain silent. A few minutes later,

26  Marchello arrested Holmes and forcefully placed her into Marchello's patrol

27  car with Park's assistance. Marchello used excessive force when handcuffing

28  and patting down Holmes.

Gillinets attempted to interview Davis while Davis was still inside the truck about what happened. Davis said he could not give a statement. Romero then demanded that Davis get out of the vehicle. After initially refusing, Davis got out of the truck. Romero immediately handcuffed Davis and forcefully put him in the back seat of the same patrol car as Reese.

Talib, Reese, Davis, and Holmes were all taken to the South Los Angeles Sheriff's Department Station. All four were patted down again and fingerprinted. Holmes told Luna that she needed to see a doctor. Luna demanded to know why. When Holmes refused to say why, Luna refused Holmes medical treatment and placed Holmes into a cell. Holmes yelled for medical treatment from the cell for two hours. Two deputies took her to Centinela Hospital to see a doctor and then returned her to jail.

Wallace told Davis that he was being booked on suspicion of driving a stolen vehicle. Davis questioned how that was possible given that he was in the passenger seat. Davis also asked whether the car was stolen. Wallace responded "that's what we're trying to determine now."

All four Plaintiffs remained in custody until the next morning, when they were all released. Talib and Reese were given a citation.

## III.

## PLAINTIFFS' CLAIMS

The four FACs set forth 23 identical claims for relief against all of the Defendants as follows:

(1)    "deterring, suppressing or breaching freedom of speech" in violation of the First Amendment;

(2)    "retaliation upon Plaintiff for protected conduct – speech" in violation of the First Amendment;

(3)    "infringement and desecration of religious rights" in violation of the First Amendment;

(4)     assault with a deadly weapon;

(5)     battery with a deadly weapon;

(6)     unreasonable search of person in violation of the Fourth Amendment;

(7)     unreasonable search of property in violation of the Fourth Amendment;

(8)     unreasonable seizure of person in violation of the Fourth Amendment;

(9)     unreasonable seizure of effects in violation of the Fourth Amendment;

(10)    "retaliation upon Plaintiff for protected conduct – silence" in violation of the Fifth Amendment;

(11)    denial of liberty without due process of law in violation of the Fifth and Fourteenth Amendments;

(12)    denial of equal protection of the laws in violation of the Fourteenth Amendment;

(13)    deprivation of Plaintiff's rights under color of law, 42 U.S.C. § 1983;

(14)    interference of Plaintiff's rights by threats, intimidation, and coercion, Cal. Civ. Code § 52.1;

(15)    intentional infliction of emotional distress;

(16)    "false arrest—false charges, booking into jail," California Gov't Code §§ 820.4 and 820.8;

(17)    "false imprisonment—restraint on plaintiff's freedom," California Gov't Code § 820.4;

(18)    extortion by wrongful threat of criminal prosecution;

(19)    "human trafficking/slavery-deprivation of Plaintiff's personal liberty," California Civil Code § 52.5;

7

1    (20)   "abuse of legal process used to harm, injure, extort, [and] coerce";

2    (21)   "neglect to prvent deprivation of rights/abuse of legal process," in

3    violation of 42 U.S.C. § 1986;

4    (22)   Conspiracy to obstruct justice, intimidate party and witnesses, in

5    violation of 42 U.S.C. § 1985(2); and

6    (23)   Conspiracy in furtherance of deprivation of Plaintiff's rights, in

7    violation of 42 U.S.C. § 1985(3).

8        The FACs allege that the LASD and the County are liable under Monell

9    v. New York City Dep't of Social Services, 436 U.S. 658 (1978), as well as

10   California Government Code §§ 815.2(a), 815.3(a) and (b), 815.6, 820, and

11   California Civil Code § 52.1(b). Talib FAC at 17; Davis FAC at 17; Reese

12   FAC at 17; Holmes FAC at 17. Plaintiffs allege that "[i]t is the custom,

13   practice and policy of the [LASD] deputies to engage in misconduct, rights

14   violations and excessive use of force towards 'people of color.'" Talib FAC at

15   18; Davis FAC at 18; Reese FAC at 18; Holmes FAC at 18. Plaintiffs further

16   allege that "[t]hese actions of violating the rights of protected groups of people

17   (i.e., 'African-Americans and/or people of color') are rampant in the LASD all

18   over Los Angeles County." Talib FAC at 18-19; Davis FAC at 18-19; Reese

19   FAC at 18-19; Holmes FAC at 18-19.

### IV.

### STANDARD OF REVIEW

22       The Court's screening of the FACs is governed by the following

23   standards. A complaint may be dismissed as a matter of law for failure to state

24   a claim for two reasons:  (1) lack of a cognizable legal theory; or (2) insufficient

25   facts under a cognizable legal theory.  See Balistreri v. Pacifica Police Dep't,

26   901 F.2d 696, 699 (9th Cir. 1990). In determining whether the complaint states

27   a claim on which relief may be granted, its allegations must be taken as true

28   and construed in the light most favorable to Plaintiff. See Love v. United

1    States, 915 F.2d 1242, 1245 (9th Cir. 1989). Further, since Plaintiff is

2    appearing pro se, the Court must construe the allegations of the complaint

3    liberally and must afford Plaintiff the benefit of any doubt. See Karim-Panahi

4    v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).

5         However, "the liberal pleading standard . . . applies only to a plaintiff's

6    factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A]

7    liberal interpretation of a civil rights complaint may not supply essential

8    elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union

9    Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents,

10   673 F.2d 266, 268 (9th Cir. 1982)).  Moreover, with respect to Plaintiff's

11   pleading burden, the Supreme Court has held that "a plaintiff's obligation to

12   provide the 'grounds' of his 'entitlement to relief' requires more than labels and

13   conclusions, and a formulaic recitation of the elements of a cause of action will

14   not do. . . .  Factual allegations must be enough to raise a right to relief above

15   the speculative level . . . on the assumption that all the allegations in the

16   complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly,

17   550 U.S. 544, 555 (2007) (internal citations omitted, alteration in original); see

18   also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (holding that to avoid

19   dismissal for failure to state a claim, "a complaint must contain sufficient

20   factual matter, accepted as true, to 'state a claim to relief that is plausible on its

21   face.'  A claim has facial plausibility when the plaintiff pleads factual content

22   that allows the court to draw the reasonable inference that the defendant is

23   liable for the misconduct alleged." (internal citation omitted)).

24        If the Court finds that a complaint should be dismissed for failure to state

25   a claim, the Court has discretion to dismiss with or without leave to amend.

26   Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). Leave to

27   amend should be granted if it appears possible that the defects in the complaint

28   could be corrected, especially if a plaintiff is pro se. Id. at 1130-31; see also

9

<u>Cato v. United States</u>, 70 F.3d 1103, 1106 (9th Cir. 1995) (noting that "[a] pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment") (citing <u>Noll v. Carlson,</u> 809 F.2d 1446, 1448 (9th Cir. 1987)). However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the Court may dismiss without leave to amend. <u>Cato</u>, 70 F.3d at 1105-06; <u>see, e.g.</u>, <u>Chaset v. Fleer/Skybox Int'l</u>, 300 F.3d 1083, 1088 (9th Cir. 2002) (holding that "there is no need to prolong the litigation by permitting further amendment" where the "basic flaw" in the pleading cannot be cured by amendment); <u>Lipton v. Pathogenesis Corp.</u>, 284 F.3d 1027, 1039 (9th Cir. 2002) (holding that "[b]ecause any amendment would be futile, there was no need to prolong the litigation by permitting further amendment").

**V.**

**DISCUSSION**

**A.    <u>Plaintiffs' Official-Capacity Claims</u>**

Plaintiffs name each of the individual Defendants in his or her official capacity. The Supreme Court has held that an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985); <u>see also</u> <u>Brandon v. Holt</u>, 469 U.S. 464, 471-72 (1985); <u>Larez v. City of L.A.</u>, 946 F.2d 630, 646 (9th Cir. 1991). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." <u>Graham</u>, 473 U.S. at 166. Official-capacity claims are "another way of pleading an action against an entity of which an officer is an agent." <u>Hafter v. Melo</u>, 502 U.S. 21, 25 (1991) (quoting <u>Monell</u>, 436 U.S. at 691). If a government entity is named as a defendant, it is not only unnecessary and redundant to name individual officers in their official capacity, but also improper. <u>See</u> <u>Ctr. for Bio–Ethical Reform, Inc. v. L. A. Cnty. Sheriff Dep't</u>,

10

533 F.3d 780, 799 (9th Cir. 2008). Here, the County and the LASD are named Defendants and each of the individual Defendants is alleged to be an LASD employee at the time of the events in question. Accordingly, Plaintiff's claims against the individual Defendants in their official capacity are subject to dismissal.

**B.** **Plaintiff Does Not Allege Any Personal Participation by Several Defendants**

In order to state a claim for a civil rights violation under 42 U.S.C. § 1983, a plaintiff must allege that a particular defendant, acting under color of state law, deprived plaintiff of a right guaranteed under the U.S. Constitution or a federal statute. 42 U.S.C. § 1983; see West v. Atkins, 487 U.S. 42, 48 (1988). Suits against government officials under § 1983 in their individual capacities "seek to impose personal liability upon a government official for actions he takes under color of state law." Graham, 473 U.S. at 165. "A person deprives another of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

In short, "there must be a showing of personal participation in the alleged rights deprivation." Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (internal citation omitted); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant."). While individual governmental agents may still be held liable for group participation in unlawful conduct, there must be some showing of "individual participation in the unlawful conduct" for imposition of liability under § 1983. Absent such individual participation, an officer cannot be held liable based solely on membership in a

group or team that engages in unconstitutional conduct unless each officer was an "integral participant" in the constitutional violation alleged. <u>Chuman v. Wright</u>, 76 F.3d 292, 294 (9th Cir.1996); <u>see also</u> <u>Jones</u>, 297 F.3d at 934.

For several of the individual Defendants, the FACs do not sufficiently allege personal involvement in the alleged constitutional violations and, thus, do not assert viable § 1983 individual-capacity claims. Plaintiffs make no allegations of specific, individual participation by Swanson, Anderson, Hooper, Will, Kiguelman, Worrell, Atkins, or Juarez. Plaintiffs may not rely on general and conclusory allegations against Defendants collectively, without specifying the individual participation of each officer in the events giving rise to each claim. It is not sufficient for Plaintiffs to refer to Defendants as an undifferentiated group. <u>See</u> <u>Jones</u>, 297 F.3d at 934 (holding that police officers could not be held liable under § 1983 for damages caused in an unreasonable search under the Fourth Amendment based on mere membership in a searching party and absent evidence of personal involvement in causing the damages). Plaintiffs' allegations of misconduct require precise identification of each officer's participation in bringing about the alleged violations. <u>See</u> <u>Pena v. Gardner</u>, 976 F.2d 469, 471 (9th Cir. 1992) (holding that vague and conclusory allegations of official participation in civil rights violations are not sufficient to state a claim under § 1983) (citing <u>Ivey</u>, 673 F.2d at 268). To the extent Plaintiffs fail to identify any specific act or omission on the part of each Defendant in bringing about the constitutional violations alleged, the FACs fail to state individual-capacity claims. Therefore, the Court finds that Plaintiffs' claims against Swanson, Anderson, Hooper, Will, Kiguelman, Worrell, Atkins, and Juarez are subject to dismissal.

**C.   <u>Plaintiffs' Claims against the County and the LASD</u>**

The Court finds that the LASD is not a proper Defendant. Under 42 U.S.C. § 1983, a plaintiff may pursue claims against "persons" acting under

12

the color of state law. The term "persons" under § 1983 encompasses state and local officials sued in their individual capacity, private individuals and entities which acted under color of state law, and local governmental entities. <u>Vance v. Cnty. of Santa Clara</u>, 928 F. Supp. 993, 995-96 (N.D. Cal. 1996). But "persons" do not include municipal departments like the LASD. <u>Id.</u>; <u>see also</u> <u>United States v. Kama</u>, 394 F.3d 1236, 1239 (9th Cir. 2005) (Ferguson, J., concurring) ("[M]unicipal police departments and bureaus are generally not considered 'persons' within the meaning of 42 U.S.C. § 1983."); <u>Nichols v. Brown</u>, 859 F. Supp. 2d 1118, 1137 (C.D. Cal. 2012) (dismissing City of Redondo Beach Police Department because "municipal departments are improper defendants in section 1983 suits"); <u>Smith v. Cnty. of Los Angeles</u>, No. 12-02444, 2013 WL 1829821, at *7 (C.D. Cal. Mar. 12, 2013) (dismissing the Sheriff's Department because it "is a municipal department of the County and is therefore not a properly named defendant in this § 1983 action"). The County is the proper Defendant, not the LASD.

Local government entities such as the County "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." <u>Monell</u>, 436 U.S. at 694. Thus, the County may not be held liable for the alleged actions of the individual Defendants whose alleged conduct gave rise to Plaintiffs' claims unless "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers," or if the alleged constitutional deprivation was "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." <u>Id.</u> at 690-91.

Municipal liability may arise when an unwritten custom becomes "so 'persistent and widespread' that it constitutes a 'permanent and well settled [municipal] policy.'" Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (quoting Monell, 436 U.S. at 691); see Thomas v. Baca, 514 F. Supp. 2d 1201, 1212 (C.D. Cal. 2007) ("A custom is a 'longstanding practice . . . which constitutes the standard operating procedure of the local government entity.' ") (quoting Menotti v. City of Seattle, 409 F.3d 1113, 1151 (9th Cir. 2005)). "Isolated or sporadic incidents" are insufficient to establish an improper municipal custom. Trevino, 99 F.3d at 918 ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." (internal citations omitted)).

The FACs do not identify, as required by Monell, any specific policies or practices in the County that caused Plaintiffs' injuries. Plaintiffs are cautioned that "[a] plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee." Davis v. City of Ellensburg, 869 F.2d 1230, 1233 (9th Cir. 1989). Plaintiffs must either identify the specific County polices or practices that caused their injuries or limit their suit to claims against individual Defendants. Accordingly, Plaintiffs' claims against the County are subject to dismissal.

**D.   Plaintiffs' First Amendment Claims**

Plaintiffs' first three claims allege violations of the First Amendment. Plaintiffs' first claims allege that Defendants' conduct deterred, suppressed, or breached Plaintiffs' right to free speech. Plaintiffs' second claims allege that Defendants retaliated against them for their protected speech. "The First Amendment forbids government officials from retaliating against individuals

1   for speaking out. To recover under § 1983 for such retaliation, a plaintiff must

2   prove: (1) he engaged in constitutionally protected activity; (2) as a result, he

3   was subjected to adverse action by the defendant that would chill a person of

4   ordinary firmness from continuing to engage in the protected activity; and (3)

5   there was a substantial causal relationship between the constitutionally

6   protected activity and the adverse action." Blair v. Bethel Sch. Dist., 608 F.3d

7   540, 543 (9th Cir. 2010) (citations and footnote omitted).

8        Plaintiffs do not allege a causal relationship between any constitutionally

9   protected activity and Defendants' adverse actions. In the absence of such

10  allegations, Plaintiffs do not state a claim for violations of their First

11  Amendment right to freedom of speech. Plaintiffs' first and second claims are

12  therefore subject to dismissal.

13       Plaintiffs' third claims allege that Defendants interfered with the free

14  exercise of their religion. To the extent that Plaintiffs are attempting to bring a

15  claim for violation of the Free Exercise Clause of the First Amendment,

16  Plaintiffs must show that the government action at issue burdened a belief that

17  is both sincerely held and rooted in religious belief. Shakur v. Schriro, 514 F.3d

18  878, 884-85 (9th Cir. 2008). Each plaintiff also "must show (1) that defendants

19  burdened the practice of his [or her] religion by preventing him [or her] from

20  engaging in conduct mandated by his [or her] faith, (2) without any

21  justification reasonably related to legitimate penological interests." Freeman v.

22  Arpaio, 125 F.3d 732, 736 (9th Cir.1997) (footnote omitted) (citing Turner v.

23  Safley, 482 U.S. 78, 89 (1987)).

24       The FACs mention religious belief only once, stating that "[t]he religious

25  garments and ornaments worn by [Plaintiffs] were disrespected with conscious

26  indifference by the defendants including the supervising officers during these

27  actions in violation of [Plaintiffs'] rights." Plaintiffs do not specify what these

28  garments and ornaments were or how the Defendants disrespected them.

1   Plaintiffs' allegations are wholly conclusory and do not state any facts

2   demonstrating that Defendants violated the First Amendment. Plaintiffs' third

3   claims are thus subject to dismissal.

4   **E.    Plaintiffs' Fourth Amendment and Assault and Battery Claims**

5   Plaintiffs' fourth and fifth claims allege assault and battery. Plaintiffs'

6   sixth through ninth claims allege violations of the Fourth Amendment. "The

7   Fourth Amendment protects individuals from unreasonable searches and

8   seizures conducted by the Government." Nat'l Treasury Emps. Union v. Von

9   Raab, 489 U.S. 656, 665 (1989). The law is clear that all claims for excessive

10   force in an arrest, investigatory stop, or other seizure of a free person must be

11   brought under the Fourth Amendment and analyzed under its objective

12   "reasonableness" standard. Graham v. Connor, 490 U.S. 386, 388 (1989). The

13   reasonableness of an officer's actions "must be judged from the perspective of a

14   reasonable officer on the scene, rather than with the 20/20 vision of

15   hindsight." Id. at 396. The determination of whether an officer's use of force

16   was "reasonable" under the Fourth Amendment "requires a careful balancing

17   of the nature and quality of the intrusion on the individual's Fourth

18   Amendment interests against the countervailing government interests at

19   stake." Id. (internal quotations omitted); see also Deorle v. Rutherford, 272

20   F.3d 1272, 1279 (9th Cir. 2001) (as amended) (holding that the force which is

21   applied must be balanced against the need for that force). Such an analysis

22   requires "careful attention to the facts and circumstances in each particular

23   case, including the severity of the crime at issue, whether the suspect poses an

24   immediate threat to the safety of the officers or others, and whether he is

25   actively resisting arrest or attempting to evade arrest by flight." Graham, 490

26   U.S. at 396; see also Tennessee v. Garner, 471 U.S. 1, 8-9 (1985) (whether a

27   seizure is reasonable under the Fourth Amendment is judged by the "totality of

28   the circumstances"). Moreover, the Supreme Court has held that, in

determining whether the force used to affect a particular seizure is "reasonable" under the Fourth Amendment, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." <u>Graham</u>, 490 U.S. at 397.

Proving claims for assault and for battery against a police officer effectuating an arrest requires a showing that the officer used unreasonable force. <u>Edson v. City of Anaheim</u>, 63 Cal. App. 4th 1269, 1273 (1998). The test applied under California law to determine if the force used was unreasonable is identical to the test applied under federal law. <u>See</u> <u>Saman v. Robbins</u>, 173 F.3d 1150, 1156 n. 6 (9th Cir.1999) (applying the same standard for excessive force under both federal and California law); <u>Edson</u>, 63 Cal. App. 4th at 1273 (citing to the <u>Graham</u> reasonableness standard in resolution of state law assault and battery claim against a police officer). In other words, Plaintiffs' claims for assault and battery under California law meet the same fate as Plaintiffs' § 1983 claims for unreasonable force under the Fourth Amendment. <u>See</u> <u>Nelson v. City of Davis</u>, 709 F. Supp. 2d 978, 992 (E.D. Cal.2010) ("Because the same standards apply to both state law assault and battery and Section 1983 claims premised on constitutionally prohibited excessive force, the fact that Plaintiff's § 1983 claims under the Fourth Amendment survive summary judgment also mandates that the assault and battery claims similarly survive.").

Generally speaking, Plaintiffs' factual allegations are arguably sufficient to allege that they were subjected to unreasonable force in violation of the Fourth Amendment. However, in order to hold individual Defendants liable, Plaintiffs must allege personal participation in the excessive force by each defendant. <u>See</u> <u>Barren v. Harrington</u>, 152 F.3d 1193, 1194 (9th Cir. 1998) ("Liability under § 1983 must be based on the personal involvement of the defendant."). Even where Plaintiffs make some allegations of personal

1    involvement by individual Defendants, some of those allegations do not

2    include allegations of personal participation in the excessive force. In

3    particular, Plaintiffs' allegations against Luna and Wallace do not include any

4    involvement in excessive force. Plaintiffs' Fourth Amendment and

5    assault/battery claims are thus subject to dismissal as to Luna and Wallace.

6    **F.**    <u>**Fifth Amendment Retaliation**</u>

7         Plaintiffs' tenth claims appear to assert that their Fifth Amendment

8    rights against incrimination were violated because Defendants retaliated

9    against their invocation of their right to remain silent. The Fifth Amendment

10   privilege protects an individual "against being involuntarily called as a witness

11   against [herself] in a criminal proceeding" and moreover privileges her "not to

12   answer official questions put to [her] in any other proceeding, civil or criminal,

13   formal or informal, where the answers might incriminate [her] in future

14   criminal proceedings." <u>Lefkowitz v. Turley</u>, 414 U.S. 70, 77 (1973). However,

15   the Supreme Court has held that "a violation of the constitutional right against

16   self-incrimination occurs only if one has been compelled to be a witness

17   against [herself] in a criminal case." <u>Chavez v. Martinez</u>, 538 U.S. 760, 770

18   (2003); <u>Stoot v. City of Everett</u>, 582 F.3d 910, 923 (9th Cir. 2009) ("[T]he Fifth

19   Amendment was not violated unless and until allegedly coerced statements

20   were used against the suspect in a criminal case.").

21        Plaintiffs do not allege that they were compelled to be a witness in any

22   subsequent criminal case against themselves. Under <u>Chavez</u>, the facts in the

23   FACs are insufficient to allege a plausible violation of Plaintiff's Fifth

24   Amendment rights. 538 U.S. at 770. Plaintiffs' Fifth Amendment retaliation

25   claims are therefore subject to dismissal.

26   **G.**    <u>**Fifth and Fourteenth Amendment Due Process**</u>

27        Plaintiffs' eleventh claims allege a denial of liberty without due process

28   of law under the Fifth and Fourteenth Amendments. As an initial matter,

Plaintiffs' reliance on the Fifth Amendment is legally flawed because the Fifth Amendment's Due Process Clause only applies to the federal government. See Bingue v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008).

The Fourteenth Amendment protects against deprivations of liberty accomplished "without due process of law." Baker v. McCollan, 443 U.S. 137, 145 (1979). "Liberty is protected from unlawful state deprivation by the due process clause of the Fourteenth Amendment." Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc). "[A] detainee has 'a constitutional right to be free from continued detention after it was or should have been known that the detainee was entitled to release.'" Lee v. City of L.A., 250 F.3d 668, 683-85 (9th Cir. 2001) (denying motion to dismiss plaintiff's substantive due process claim because plaintiff sufficiently alleged that he was incarcerated for one day and the arresting police officers should have known that he was not the fugitive). The Ninth Circuit has recently held that in the context of a § 1983 suit against police officers for a due process violation, official conduct "shocks the conscience" when the officer "either consciously or through complete indifference disregards the risk of an unjustified deprivation of liberty." Tatum v. Moody, 768 F.3d 806, 820-21 (9th Cir. 2014) (quoting Gantt v. City of Los Angeles, 717 F.3d 702, 707 (9th Cir. 2013)).

Plaintiffs have not alleged that any individual Defendant knew or should have known that they were entitled to be released. Indeed, it appears from the face of the FACs that Plaintiffs were released within several hours of being taken into custody. Plaintiffs make no allegations that any of the Defendants made a false statement, withheld information, or engaged in any conduct to prolong their detention. Cf. Shay v. Cnty. of L.A., No. 15-4607, 2015 WL 6513632, at *4 (C.D. Cal. Oct. 26, 2015) (finding adequate allegations that official conduct "shocked the conscience" where officer's false statements led to plaintiff's incarceration for 11 days). The Court therefore finds that

1  Plaintiffs' eleventh claims for violation of due process are subject to dismissal.

2  **H.  <u>Equal Protection</u>**

3  Plaintiffs' twelfth claims allege a violation of the Equal Protection

4  Clause. The Equal Protection Clause requires that persons who are similarly

5  situated be treated alike. <u>City of Cleburne v. Cleburne Living Ctr., Inc.</u>, 473

6  U.S. 432, 439 (1985). An equal protection claim may be established in two

7  ways. First, a plaintiff may establish an equal protection claim by showing that

8  the defendants acted with an intent or purpose to discriminate against the

9  plaintiff based upon the plaintiff's membership in a protected class. <u>See, e.g.</u>,

10  <u>Thornton v. City of St. Helens</u>, 425 F.3d 1158, 1167 (9th Cir. 2005); <u>Lee</u>, 250

11  F.3d at 686. Second, a plaintiff may establish an equal protection claim by

12  showing that similarly situated individuals were intentionally treated

13  differently without a rational relationship to a legitimate state purpose (or a

14  compelling need in a case involving a suspect class or a fundamental right).

15  <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000); <u>SeaRiver Maritime</u>

16  <u>Fin. Holdings, Inc. v. Mineta</u>, 309 F.3d 662, 679 (9th Cir. 2002).

17  Plaintiffs allege that Defendants' acts were "racially, religiously, socio-

18  economically and socio-politically discriminatory" as Plaintiffs are African-

19  Americans. These conclusory allegations are not enough. The allegations in

20  the SACs are not sufficient to raise an inference that any Defendant acted with

21  a discriminatory purpose. <u>See Iqbal</u>, 556 U.S. at 683 (finding "respondent's

22  complaint does not contain any factual allegations sufficient to plausibly

23  suggest Petitioner's discriminatory state of mind"). Plaintiffs allege no facts

24  indicating that their membership in a protected class was the reason for

25  Defendants' actions. The SACs contain no allegation that any Defendants

26  made a racial remark or even that any speech or conduct was unreasonably

27  condescending. Even a liberal construction of a complaint cannot supply

28  essential elements of a claim that have not been pleaded. <u>See Ivey</u>, 673 F.2d at

268. Accordingly, Plaintiffs have failed to set forth an equal protection claim against Defendants.

## I.    Plaintiff's "Color of Law" Claim

Plaintiffs' thirteenth claims allege deprivation of Plaintiffs' rights under color of law but do not specify any specific right. As noted above, acting under color of state law is an element of any § 1983 claim. But Plaintiffs must also allege they were deprived of a right guaranteed under the U.S. Constitution or a federal statute. Thus, Plaintiffs' thirteenth claims are subject to dismissal.

## J.    California Civil Code § 52.1

Plaintiffs' fourteenth claims allege interference of Plaintiffs' rights by threats, intimidation, and coercion in violation of California Civil Code § 52.1, also known as the Bane Act. That statute provides a right to relief when someone "interferes by threats, intimidation, or coercion . . . with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of [California]." Cal. Civ. Code § 52.1. To prevail on a § 52.1 claim, a plaintiff must therefore prove (1) a violation of a constitutional or statutory right (2) by intimidation, threats or coercion. Venegas v. Cnty. of Los Angeles, 153 Cal. App. 4th 1230, 1242 (2007). The Ninth Circuit recently held that liability under § 52.1 can be based on the same facts as an underlying constitutional violation. Chaudhry v. City of L.A., 751 F.3d 1096, 1105-06 (9th Cir. 2014). However, "[t]he act of interference with a constitutional right must itself be deliberate or spiteful." Shoyoye v. Cnty. of L.A., 203 Cal. App. 4th 947, 959 (2012). Thus, "where coercion is inherent in the constitutional violation alleged . . . the statutory requirement of 'threats, intimidation, or coercion' is not met." Id. In such cases, "[t]he statute requires a showing of coercion independent from the coercion inherent in the wrongful detention itself." Id.

Therefore, Plaintiffs must allege facts showing that Defendants engaged in wrongful conduct or employed threats, intimidation, or coercion independent of the wrongful detention. The FACs do not contain any such allegations. Plaintiffs do not allege any facts suggesting that Defendants engaged in independent wrongful conduct. As a result, Plaintiffs' § 52.1 claims are subject to dismissal.

**K.     Intentional Infliction of Emotional Distress**

Plaintiffs' fifteenth causes of action allege a claim of intentional infliction of emotional distress. Under California law, intentional infliction of emotional distress requires "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Davidson v. City of Westminster, 32 Cal.3d 197, 209 (1982). The conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized society." Id.

Even if the Court assumes that Plaintiffs' allegations are sufficient to show extreme and outrageous conduct, Plaintiffs do not allege sufficient facts to show either (a) that any Defendant acted with the intent of causing, or reckless disregard of causing, emotional distress, or (b) that any Plaintiff in fact actually suffered severe or extreme emotional distress. As a result, Plaintiffs' fifteenth cause of action fails to state a claim for relief.

**L.     False Arrest/Imprisonment**

Plaintiffs' sixteenth and seventeenth claims seek to assert state-law claims of false arrest and false imprisonment. Under California law, a police officer may be held liable for false arrest and false imprisonment. Cal. Gov't Code § 820.4 ("A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law. Nothing in

this section exonerates a public employee from liability for false arrest or false imprisonment."). False imprisonment under California law is the "unlawful violation of the personal liberty of another." Asgari v. City of L.A., 15 Cal.4th 744, 757 (1997). False arrest is not a different tort; it is merely "one way of committing a false imprisonment." Collins v. City & Cnty of San Francisco, 50 Cal. App. 3d 671, 673 (1975). To establish a claim of false arrest or false imprisonment, Plaintiffs must prove: (1) Defendants intentionally deprived Plaintiffs of their freedom of movement by use of physical barrier, force, or threat of force, or other unreasonable duress, (2) without Plaintiffs' consent, (3) which harmed Plaintiffs, and (4) that the harm was substantially caused by the Defendants' conduct. Fermino v. Fedco, Inc., 7 Cal.4th 701, 715-16 (1994).

For purposes of screening the FACs, the Court finds that Plaintiffs have arguable pleaded adequate claims of false imprisonment based on their allegations that Defendants Guerrero, Park, Romero, Marchello, Orbe, Gillinets, and North acted without legal justification by placing them under arrest and transporting them to jail where there were detained overnight.

**M.    Extortion**

Plaintiffs' eighteenth claims allege extortion by wrongful threat of criminal prosecution. California law defines extortion as "the obtaining of property from another, with his consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right." Cal. Penal Code § 518.2; see also Monex Deposit Co. v. Gilliam, 666 F. Supp. 2d 1135, 1136 (C.D. Cal. 2009). California has recognized a civil cause of action for the recovery of money obtained by the wrongful threat of criminal prosecution, whether the claim is denominated as wrongful threat of criminal or civil prosecution. Fuhrman v. Cal. Satellite Sys., Inc., 179 Cal. App. 3d 408, 426 (1986); Monex Deposit Co., 666 F. Supp. 2d at 1136. The Court construes Plaintiffs' eighteenth claims as claims for civil

1  extortion. However, the FACs do not adequately allege that Defendants

2  obtained property or money from Plaintiffs with their consent, at least in part

3  induced by wrongful use of fear, or that Defendants at any time threatened

4  criminal or civil prosecution. Plaintiffs' extortion claims are therefore subject

5  to dismissal.

6  **N.   <u>California Civil Code § 52.5</u>**

7      Plaintiffs' nineteenth claims allege human trafficking, slavery, and

8  deprivation of Plaintiffs' personal liberty in violation of California Civil Code §

9  52.5. This statute provides a civil cause of action for victims of human

10  trafficking. Human trafficking is defined under California law as follows:

11          Any person who deprives or violates the

12          personal liberty of another with the intent to . . .

13          obtain forced labor or services, is guilty of human

14          trafficking.

15          . . .

16          For purposes of this section, 'forced labor or

17          services' means labor or services that are performed or

18          provided by a person and are obtained or maintained

19          through force, fraud, or coercion, or equivalent

20          conduct that would reasonably overbear the will of the

21          person.

22  Cal. Penal Code § 236.1(a), (e).

23      Here, even if the Court accepts the premise that Plaintiffs' allegations are

24  sufficient to show that Defendants deprived or violated their personal liberty,

25  there is no allegation that Defendants acted with the intent to obtain forced

26  labor or services as defined by California law. As a result, Plaintiffs' California

27  Civil Code § 52.5 claims are subject to dismissal.

28  */ / /*

**O.** **42 U.S.C. §§ 1985(2) and (3), 1986**

Plaintiffs' final three claims purport to set forth violations of 42 U.S.C. § 1986, 1985(2), and 1985(3). All three claims are subject to dismissal.

To state a claim under both 42 U.S.C. §§ 1985(2) or 1985(3), Plaintiff must allege a conspiracy motivated by class-based, invidious animus. See Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 267-68 (1993) (section 1985(3)); Griffin v. Breckenridge, 403 U.S. 88, 101-02 (1971) (same); Butler v. Elle, 281 F.3d 1014, 1028 (9th Cir. 2002) (same); Portman v. Cty. of Santa Clara, 995 F.2d 898, 909 (9th Cir. 1993) (section 1985(2)). "To state a claim for conspiracy to violate constitutional rights, the plaintiff must state specific facts to support the existence of the claimed conspiracy." Olsen v. Idaho State Bd. of Medicine, 363 F.3d 916, 929 (9th Cir.2004) (citation and internal quotations omitted).

Here, Plaintiffs' allegations are insufficient to state either a section 1985(2) or 1985(3) conspiracy. Plaintiffs fail to allege any facts which demonstrate that there was a conspiracy, or that any deprivation of rights was racial or class-based in motivation. Mere allegations of conspiracy without factual specificity are insufficient. See Iqbal, 556 U.S. at 679 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Olsen, 363 F.3d at 929 (holding dismissal of § 1985(2) claim proper where plaintiff "failed to allege sufficiently that the appellees conspired to violate her civil rights"; conclusory allegations that defendants discriminated against plaintiff on account of "religion, race, and/or national origin" are insufficient).

Section 1986 imposes liability on every person who knows of an impending violation of 42 U.S.C. § 1985 but neglects or refuses to prevent the violation. However, "a cause of action is not provided under 42 U.S.C. § 1986 absent a valid claim for relief under section 1985." Trerice v. Pedersen, 769

25

F.2d 1398, 1403 (9th Cir. 1985); <u>Rasmussen v. City of Redondo Beach</u>, No. 07-7743, 2008 WL 4450322, at *9 (C.D. Cal. Sept. 29, 2008).

## VI.

## CONCLUSION

To summarize, the Court finds that: (1) Plaintiffs' official-capacity claims are subject to dismissal; (2) all of Plaintiffs' claims against Defendants Swanson, Anderson, Hooper, Will, Kiguelman, Worrell, Atkins, or Juarez are subject to dismissal; (3) all of Plaintiffs' claims against the LASD are subject to dismissal; (4) Plaintiffs' <u>Monell</u> claims against the County are subject to dismissal; (5) Plaintiffs' First Amendment claims are subject to dismissal; (6) Plaintiffs' assault and battery and Fourth Amendment claims against Defendants Luna and Wallace are subject to dismissal; (7) Plaintiffs' Fifth Amendment retaliation claims are subject to dismissal; (8) Plaintiffs' due process claims are subject to dismissal; (9) Plaintiffs' equal protection claims are subject to dismissal; (10) Plaintiffs' color of law claims are subject to dismissal; (11) Plaintiffs' claims for violations of California Civil Code § 52.1 are subject to dismissal; (12) Plaintiffs' claims of intentional infliction of emotional distress are subject to dismissal; (13) Plaintiffs' extortion claims are subject to dismissal; (14) Plaintiffs' extortion claims are subject to dismissal; (15) Plaintiffs' claims for violations of California Civil Code § 52.5 are subject to dismissal; and (16) Plaintiffs' claims for violations of 42 U.S.C. § 1986, 1985(2), and 1985(3) are subject to dismissal.[1]

---

[1] The Court thus finds that Plaintiffs have adequately pleaded claims of assault and battery, Fourth Amendment violations, and false arrest/imprisonment against Defendants Guerrero, Park, Romero, Marchello, Orbe, Gillinets, and North. To the extent Plaintiffs decide to file a Second Amended Complaint that is limited to those claims against those Defendants in their individual capacity, the Court will order service of the Second

For the reasons discussed above, the FACs are subject to dismissal. Because it is not absolutely clear that at least some of Plaintiffs' pleading deficiencies cannot be cured by amendment, such dismissal will be with leave to amend. Accordingly, if Plaintiffs still desire to pursue their claims, each shall file a Second Amended Complaint within thirty-five (35) days of the date of this Order remedying the deficiencies discussed above. Plaintiffs should omit claims that lack a legal basis. Each Second Amended Complaint should bear the docket number assigned in the applicable case; be labeled "Second Amended Complaint"; and be complete in and of itself without reference to the prior complaints or any other pleading, attachment or document.

**Plaintiffs are admonished that, if any or all of them fails to timely file a Second Amended Complaint, the Court will recommend that any such action be dismissed with prejudice for failure to diligently prosecute.**

Dated:   November 20, 2015

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge

Amended Complaint by the United States Marshal's Service on those named Defendants.

27